Good morning, and may it please the Court, I'm Richard Postman. I'm an Assistant Attorney General for the State of Alaska, representing the Office of the Governor. I'd like to reserve five minutes for a rebuttal. This appeal involves questions of Eleventh Amendment sovereign immunity, specifically whether Congress took the actions required by the Supreme Court's congruence and proportionality test to show that it intended, with appropriate legislation under Section 5 of the Fourteenth Amendment, to abrogate the State of Alaska's sovereign immunity from private suit for money damages. The statute in question is Title III of the Civil Rights Act of 1991. It's also commonly known as the Government Employee Rights Act. Also, it's referred to in the briefs by both parties as GARA. Let me set the table, explain what's at stake. We're going to call that the GARA, is that what you guys? Well, both sides have shortened it down to GARA. Government E's. It's going to be GARA for this argument. Okay, that's fine, as long as I get a school card. Well, let me explain what's at stake, and then explain why, using a textbook application of the Supreme Court's congruence and proportionality test, the State of Alaska should win this case, or should lose. Let me set the table. This case started in 1990 when Walter Hickel was elected Governor of Alaska. He chose Margaret Ward to be the director of his office in Anchorage. He chose Lydia Jones to be one of the special staff assistants, and he fired them in 1984 for disloyalty reasons. Ms. Ward and Ms. Jones responded by filing a charge of discrimination with the EEOC. Governor Hickel raised Title VII's exemption for elected state officials and their staffers as a defense. This exemption was enacted by Congress to protect state sovereign immunity. In 1994, the EEOC determined that Ms. Ward's and Ms. Jones' claims were exempt from Title VII's coverage, and that it would proceed under the Government Employee Rights Act. And then nearly 10 years later, Ms. Ward and Ms. Jones' widower, Kenneth Miller, requested a hearing. So the question is whether the Government Employee Rights Act is appropriate legislation under Section 5 of the 14th Amendment that overcomes, that abrogates, the state's sovereign immunity, the 11th Amendment's protections from private suits for money damages. Section 5 of the 14th Amendment allows abrogation only through appropriate legislation. The Supreme Court has determined that what constitutes appropriate legislation against the states, Congress must use a clear statement of its intent to abrogate sovereign immunity using 14th Amendment powers. Congress must create a legislative record documenting a pattern of discrimination by elected state officials in violation of the 14th Amendment. And then the court has to do a balancing test. It has to take the legislative record and match it up against the remedy that Congress has enacted to see if it's congruent and proportional. What's at stake was explained by the Supreme Court in Alden v. Maine. The quote from that case is that abrogation of immunity is Congress's power to, quote, turn the state against its self, to commandeer the entire political machinery of the state against the will of its citizens at the behest of an individual. When the government asserts, when the federal government asserts authority over a state's most fundamental political process, it strikes a heart at the political accountability so essential to our liberty and republican form of government. So where did Congress go wrong in adopting GARA? It went wrong on every step of the congruence and proportionality test. Well, how about the clear expression part first? Well, I'd like to first clarify something. My brief, I try to fit the clear statement doctrine under the Fremont County case, that both parties. In Fremont County, it referenced the court, the Tenth Circuit in that case put the expressed intent to act under the 14th Amendment as part of the clear statement doctrine. Other cases say that's part of the legislative history requirement. Whether it falls under both, whether it falls under the clear statement doctrine or the legislative history requirement, it's still a requirement. It points out in the Supreme Court's case, Nevada versus Hibbs, the Supreme Court does both. It shows that in both the legislative history and in the clear statement, Congress has to reference the 14th Amendment and express an intention to abrogate. In this case, taking the findings that the Fremont County Court did under the Tenth Amendment and plugging it into an Eleventh Amendment analysis, it's a textbook example of a statute that fails the congruence and proportionality test. For example, Fremont County Court found no statement of an intent to abrogate immunity, intent to permit a claim, but not intent to abrogate the state's sovereign immunity defense. So did Congress have to say explicitly, we hereby abrogate or that 11th Amendment immunity or that a state can be a defendant? There are many ways of stating it, but if it's stated and intended to abrogate immunity, it could have stated it's intending to act pursuant to the 14th Amendment. Now, this was an amendment to Title VII, correct? Title III of the Government Employees' Rights Act is not an amendment. No provision within Title III of the Civil Rights Act states that it's an amendment to Title VII. Title I, Title II have provisions that purport to amend Title VII, but no provision of the Government Employees' Rights Act identifies itself as an amendment to Title VII. So where are the employees getting their rights? What does it do then? It's nothing? Well, the Government Employees' Rights Act takes a class of employment that's exempt from Title VII. And puts it back in. Puts it into a separate administrative process. Is it a separate administrative process or the administrative process that was already there, but from which they were exempted? If you recall, GARA has its own implementing regulations that are separate from Title VII's regulations, implementing regulations. Did that answer your question? Maybe, but maybe you can clear this up for me. As I understand it, there was an amendment made to the Civil Rights Act allowing state employees to come within Title VII, but exempted a certain group. That was in 1972, correct. Then, in the act before us now, they do away with that exemption, correct? They don't do away with the exemption from Title VII. To this day, elected officials and their staffers are exempt from Title VII. The question is whether GARA creates a new cause of action that's an administrative cause of action before the EEOC itself. How is the people that GARA involves, how are they treated differently from other state employees that come within Title VII under the Civil Rights Act? Under Title VII, ordinary state employees can have a private cause of action against the state. Elected officials and their staffers are exempt from Title VII. So that class of state employees cannot bring a Title VII claim against the state of Alaska. They can only bring this administrative cause of action. What will they get if they bring the administrative action? What possible remedy can they get against the state? Well, Ms. Ward has only asked for money damages. Please answer my question. Yes, sir. What possible remedy could they get? In general, what are... Under GARA, what possible remedy could the high-end staff person get? It's a very simple question. Okay, they can get injunctive relief, they can get money damages. And what would the injunction, how would that go? Well, it hasn't been litigated in this case because the claimant's... Well, you must know the statute. What do you imagine happens? They will be reinstated to their position. You think that would be injunctive relief? Well, that... And that would not be an impairment of the immunity of the state? I think it would. I think that if this was an issue in this case, I would have argued it. GARA clearly allows the EEOC to reinstate a staffer on a governor's staff. And for that, there was some abrogation of state immunity. I think that under... Your question is whether this type of state immunity would be allowed under the Tenth Amendment. I didn't brief any Tenth Amendment action. I know you didn't, but the big problem for me, and perhaps for the others, is that you can't say the statute does nothing. And your argument is that this is just something up in the air. I mean, when they talk about state employees getting a right, do they just say it's just a sort of public announcement, but nothing goes with it? Well, the Supreme Court has explained that Congress can enact standards against the state under the Tenth Amendment but prohibit private citizens from enforcing those standards under the Eleventh Amendment. And I would argue that that is exactly what's occurred in this case. Could you explain that a little bit? Well, actually, I got this from your book, Your Honor. But also the cases that I cited from the Supreme Court, specifically Blatchford, where the Supreme Court explained that Congress permitting a claim against the state is very different from Congress abrogating the defense of sovereign immunity. And so while Congress can permit a claim against a consenting state, and in this case if the state of Alaska consented to this GERA claim, then yes, GERA would give the EOC jurisdiction to hear this case. But the state of Alaska has not consented, and under the Eleventh Amendment, Congress hasn't abrogated that defense from this sort of claim. Did that answer your question, Your Honor? Well, I take it that unless the state consents, nothing is achieved by the statute. That's correct. Without a proper abrogation, nothing is achieved by the statute unless the state consents. So it's a right without a remedy. If the state does not consent, correct. That's the essence of what you're saying. That's correct, Your Honor. So going through the congruence and proportionality test, we don't have any reference. We don't have the words that Congress is intending to abrogate this defense. There's no words that it's acting under the Fourteenth Amendment. When GERA refers to Title VII, it refers to a provision that applies to federal employees. By definition, that's a provision of Title VII that was not enacted pursuant to the Fourteenth Amendment because the Fourteenth Amendment doesn't apply to the federal government. It applies to states. An example of this is to show the distinction, the federal government can waive its sovereign immunity with a clear statement. But a clear statement is only the first step of the congruence and proportionality test when Congress is trying to abrogate the immunity of another entity. Did the 1972 amendments meet the objections that you've raised here? Yes, it would. Because in that case, when Congress was abrogating sovereign immunity for most categories of employment, it specifically carved out an exception for elected state officials and their staffers. No, let me just ask. For those state employees that came under the 1972 amendment, there was no Eleventh Amendment problem there, as you see it. No, I don't see it. And I think that that's fairly well established that the 72 amendments for other types of state employment was a congruent and proportional response to what Congress identified as being a problem among the states, that Congress identified in its legislative history. Okay. Then when we get to the current bill, why can't they rely on the 1972 record? Because it deals with state employees, it deals with a common problem, and it merely excluded some of the state employees. Why did they have to go back and say the same thing again when it's an amendment to that very statute? Well, Congress in 72 made that distinction between categories of state employees that would be covered and categories where there was a sovereign immunity interest that didn't justify the extension of Title VII. Now, if the EEOC or the State Employees' Administration There's nothing, is there, in the record where the Congress made an actual finding at that time that there's no need of a problem in this excluded group? It just seemed to me politically it wasn't going to happen. Well, four senators made a finding. They introduced an amendment and a majority of senators and House of Representatives agreed with them and enacted the exemption. So I would say that Congress did make a finding that a remedy against elected state officials was not appropriate legislation. Not necessarily. They may have just found they're not going to do it. Politically. Well, politically. But then if Congress in 91 is going to reverse that decision made in 1972, it's got to have a legislative record that explains that. So the question is, is the legislative record in 72 sufficient? If all they did was say, okay, we have evidence for all state employees, but these over here politically we're not going to touch, later on we change our mind there. Why would they have to go back if the legislative record was for all state employees? Well, the legislative record wasn't for all state employees. And I think that it's important to remember that time and time again in different civil rights statutes, this category of employment has been exempted. For example, right after the 1991 amendments to the Civil Rights Act, Congress enacted the Family Medical Leave Act in 1973, and the Supreme Court in Nevada v. Hibbs explained that this category of a state employee continues to be of particular importance to the states. In Hibbs, the congruence and proportionality analysis, part of the reason why the FMLA, the Family Leave Provision of the Family Leave Act, was congruent and proportional to Congress's findings was because it was exempting this category of state employees. But they found that there's a problem with state employees. Then an amendment is made that we're going to exclude these. I don't quite understand why that finding that there's a problem with all state employees isn't sufficient for this, why they have to go back and redo it for this group, because apparently they had it for all employees and then there was an amendment carving these people out. So I take it your question is, you know, why did Congress make a distinction between state employees in 72 when they could have just covered them all? Yeah. And I think they could have in 72. But once Congress does make that distinction, then they have to explain it in their legislative history why they're removing that distinction. Assume for the sake of argument that in the findings they made, it covered all employees, including the ones they subsequently excluded. Would they have to go back and make new findings for a group they've already made them for, even though they decided later to exclude? Yes, because in 72, they determined that it wasn't appropriate legislation. And so now to show that it is appropriate legislation, there's going to have to be new findings that explains why it's appropriate legislation. And if I was going to write that in an opinion, I couldn't cite what you just told me. I'd have to cite some case. What is the case I would rely upon in order to come to that conclusion? Gregory versus Ashcroft. Just go to Gregory. Yeah. In fact, if you look at Justice Stevens' dissent in that case, he explained the ADA's exemption by looking at Title VII's exemption, and he goes in detail to explain what Congress's concerns were and why extending Title VII to elected officials and their staffers was not appropriate legislation. If you look in Fremont County, some of that same legislative history is discussed in that case as well. If you'd like to save, you've got three minutes. I would like to save for a rebuttal. I would, Your Honor. Okay. Thank you. We'll hear from you. Now, are you going to share? Are you sharing time? Are you doing it all? Yes, I am, Your Honor. I am sharing my time with Ms. Holan. I am going to take 15 minutes, and she's going to take five. All right. Could we say at the start, just please be sure to keep your voice up. Okay. I will try, Your Honor. Thank you. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent respondents to the United States and the EEOC. When, in enacting GERA, Congress extended the protections of Title VII to previously exempt state appointees, it acted within its authority under the 14th Amendment and therefore validly abrogated state sovereign immunity. But did it do so expressly and clearly? Yes, it did, Your Honor. And I actually don't understand counsel for Alaska to be disputing the clear intent to allow suits against the state. The clear statement he seems to be talking about is whether Congress did so validly under the 14th Amendment. There is no dispute in their brief to the clear language of the statute which we cite, which states, for example, that the rights, protections, and remedies provided pursuant to Section 2000E16B of this Act, which is GERA, shall apply with respect to employment of any individual chosen or appointed by a person elected to public office in any state. It's entitled coverage of previously exempt state employees. I mean, this section of the Civil Rights Act of 1991, this particular section only applies to the local and state employees. It's different than in cases where you have a broad statute and the court has found it's not clear that, for example, person is intended to mean state. I mean, here, the statute on its face clearly applies to state employees and allows such state employees to bring an action against the state before the EEOC and then also further provides for judicial review in the Court of Appeals. Would you clarify one? Counsel just said that GERA was not an amendment to Title VII. Is that correct? How do you understand what Congress did? Well, I think that it was part of the Civil Rights Act of 1991, which did, as counsel stated, amend other parts of Title VII. What it did, actually, was to incorporate Title VII and explicitly extend the provisions of the federal sector Title VII to these previously exempt state and local political appointees. So it wasn't actually amending Title VII as such back then, but it was extending, it was completely incorporating the remedies and protections of Title VII and did so expressly. It was an administrative process similar to what's available to the circuit. Similar. It is not identical, but it is similar. In fact, contrary to what counsel for Alaska stated, we think the Tenth Circuit case strongly supports our argument here, the Fremont County case, because there the Tenth Circuit found in rejecting a Tenth Amendment challenge that GERA was enacted under Congress's Fourteenth Amendment authority, and there what the Tenth Circuit said was that you need to look at this in context, that there was a broadening of Title VII and there was a sequence of steps. And in 1972, Congress first extended Title VII protections and actually then amended Title VII to apply to most state employees and establish a lengthy legislative record there, which the Supreme Court itself upheld as a valid abrogation of sovereign immunity. So when Congress enacted GERA, it was the last step in the sequence to cover previously exempt state appointees, and Congress was doing so in the backdrop of this really strong legislative record in 1972, where they could have extended it to the employees who are now covered, and also... Well, can I ask you about that, because that really is a sticking point for me, that this group of state people are high-ranking people. If they've got to the place they are in, either elected or appointed, it's because there's a positive feeling about them. They are not a group that would be easily discriminated. It's somewhat like the last case. The person has really done very well. There's no animus. The governor likes these people and so forth. So don't you think you might have to show that this favored group is sometimes or often the subject of discrimination? Your Honor, I don't think you have to parse the statute that specifically. Well, I'm doing it. Tell me what's wrong with it. I think the requirement that the Supreme Court has set is that in the congruence and proportionality test, is you look first at the right that Congress – you have to identify the right that Congress is trying to protect. Here, it is the core 14th Amendment right to be the equal protection guarantee and to prevent state discrimination on the basis of race or sex. Given that, Congress, as the Supreme Court stated and this Court stated in Hibbs and the Supreme Court subsequently reaffirmed in Tennessee v. Lane, that Congress, when it is acting to prohibit race and sex discrimination, which are subject to heightened scrutiny or strict scrutiny based on the history of race and sex discrimination in the country, which has been recognized repeatedly by this Court and by the Supreme Court, they have more leeway that stronger remedies can be appropriate in that situation in contrast to when Congress is actually trying to – discrimination and disability discrimination. So in that context, that's all taken into account in the congruence and proportionality test. And in doing so, if Congress, as it did in 1972, makes specific findings that the state and local governments have not protected their employees against discrimination and have – in fact, they cited one study which showed that discrimination was actually worse in state public employment than private employment. But did they make any findings about high-level state employees? There weren't – so we have cited some of the 1972 legislative history, and there were – you know, they did cite some examples in law enforcement agencies and district attorney's offices. So, you know, there are certainly – How about high-level political appointees? I did not see anything specifically about that, but I don't think that was necessary with all due respect, Your Honor, because this – if they – that decision is – if Congress feels that that legislation is necessary when it's combating this kind of history of race and gender discrimination, then it's not – the 11th Amendment – the Supreme Court's precedent has recognized that when acting under the 14th Amendment, Congress can intrude into areas of state sovereignty. And so even if they are going to cover high-level employees, that in itself does not make the abrogation invalid. Okay, you're saying they can do it to high-level employees. Yes, they can. Okay. As I understand, your argument is based upon that GURA doesn't need to go into extensive findings about high-level employee discrimination because that were already done in 72. Counsel argues, look, Congress in 72 went through this and made a valid decision by Congress that it wasn't necessary to cover high-level government employees. That is, they've looked at their own findings and made a determination there isn't sufficient to extend it. Now, you come along, and Congress, and extend it without going to any findings at all as to whether there's any discrimination in race, sex, or otherwise in high-level employees. And he says you can't do that. So it seems to me that the argument that divides you is to whether or not you can do the 72 findings and use the 72 findings for GURA. Now, if that's the case, what's wrong with his argument that the legislature looked at the findings of the day, they made a decision there weren't sufficient findings for high-level employees and high-level political employees, and they made a decision that it's only going to go that far. And if Congress is going to go any further, they've got to show some basis for it. What would be your response to that argument? My response is that that is not shown in the legislative history of the 1972 act and that Congress does not need to address a problem all at once. And it makes political decisions. And as the Supreme Court held in Garcia, which is a Tenth Amendment case, that the political process protects, you know, these kind of state sovereignty interests and these kind of... Precisely. They made a decision in 72. Now they want to make one in GURA. So counsel says, well, you've got to go back and show something in there that high-level state public employees. There's got to be some record. You can't just go back to 72 when they decided not to include them. You have to have a new record to show why you should include them. Well, as I stated, Your Honor, if you look at Fitzpatrick v. Vitzer and how it upheld that abrogation of state sovereign immunity, it didn't parse the legislative findings as to which types of employers were found to have discriminated. There was just an overall pattern of state discrimination on the basis of race and sex. And if just as, you know, the court said that in Hidge you didn't have to find that every single state had acted discriminatorily with respect to, you know, leave policies to enact a nationwide remedy. Here, as long as there is this very strong basis that Congress has already shown of state discrimination, the Supreme Court has made clear that it is easier for Congress to satisfy this requirement. That's fair. That's fair. But suppose Congress in 1972 had said specifically, we don't think our findings are sufficient to include high-level political appointees. Just assume that happened. Would you be able to amend with Gura without anything further? Or would the Congress have to come back and say, well, now we've changed our mind and there is sufficient and this is why? Your Honor, I think that would be a much harder case in that if they found it in the context of saying there's really no need for this legislation with respect to this specific. Right, right, right. But, you know, but I'm not at all conceding that they would have to. I understand, but you understand that's the basis of his argument. He's saying that when they specifically voted with an amendment saying it wouldn't cover high-level employees, Congress is making a decision that they won't have enough evidence to go there. That's his argument. But we don't know what basis Congress was making that. Maybe, you know, what they do have is a legislative record strong enough, but we're not just relying on the legislative record. If you look at your own court's precedent in Hibbs, which, you know, was affirmed by the Supreme Court, that this court says the fact that when you are legislating to prevent race and sex discrimination subject to heightened and strict scrutiny, which in 1993 the Supreme Court found in Hibbs that Title VII itself wasn't enough and that Congress was justified in enacting further remedies to stop gender discrimination. And the court has repeatedly recognized the problems in the country that persist with race discrimination, that the burdens are very different with respect to, you know, what kind of legislative showing or pattern that Congress needs to show. I think here, given the core 14th Amendment purpose of GIRA, that the 1972 legislative record, in addition to Supreme Court precedent, especially in Hibbs and in Lane and in the Voting Rights Act cases and, you know, a number of the cases we cited in our brief, which recognize this history of discrimination and distinguish what the burden is on Congress, are more than enough to justify extending Title VII further. And you also have to look at the... You're going on so fast. I'm sorry. I really want to interrupt you, Ms. Marcus. I want to tell you my basic problem. We have to do a little prophesying when we're on this court because a case like this is very likely to go to the Supreme Court. In Hibbs and Lane were five to four decisions. The Chief Justice and Justice O'Connor are gone. They've been replaced by two justices who are very likely to have the same outlook on this question as the four dissenters had in those cases. And you speak somewhat disparagingly about passing the statute. That's the way those justices acted in this area. They are not very open in general to piercing the immunity of the states. And I would expect the present Supreme Court to be pretty hostile to this sort of thing. And we have to make a judgment about that. But you can't blind yourself to the changes in the court. With all due respect, Your Honor, I think also under Supreme Court precedent, unless and until the Supreme Court itself overturns Hibbs or Lane or your court overturns its own precedent in Hibbs, then you are bound by those decisions. And this is the framework, the current Supreme Court framework under which you're acting. And I would add that there have been a series of court of appeals challenges, not in this court but in other courts, to other aspects of Title VII. For example, there have been challenges saying, well, the abrogation of state immunity was fine under Title VII  but there's no evidence of retaliation on the parts of state or there's no evidence that states discriminated against men. So why is that constitutional, notwithstanding that Fitzpatrick v. Bitzer itself involved male plaintiffs? But in these cases, the courts of appeals have consistently and unanimously rejected these challenges and saying what Congress needs to do is identify this general pattern of discrimination and a history of discrimination. And then they have this broad leeway with respect to remedy, which I would add here, as we state in our brief, the remedies here are entirely congruent and proportional, unlike the Family Medical Leave Act. There's no substantive benefit extended to these employees. It's the Title VII remedies, which are the equitable remedies allowed by Title VII, and compensatory damages, but only in cases of intentional discrimination, which itself violates the Equal Protection Clause. So the remedies here are entirely congruent and proportional to the serious violation identified. Let me try you out on another argument that has occurred to me. You know, in that whole series of cases where the immunity of the states was upheld, I think beginning in 1990, quite a lot of talk was made about the dignity of the state. Now that's a difficult concept to grasp, but there it is. And here you were subjecting a dignified state to an administrative agency. What could be more of an impairment of state dignity than to be subjected to an administrative process? Well, Your Honor, I think the Federal Maritime Commission case recognized exactly that dignitary interest by saying that the state does indeed have Eleventh Amendment immunity before an agency. But if Congress has validly abrogated that Eleventh Amendment immunity, then it's entirely proper to subject the state to a proceeding before an agency, as well as court proceedings. And here there are several parts of the statute, which we highlight in our brief, which, you know, in the administrative process here, when the charges are first filed, it does initially get referred to, if there is a state equal employment or fair employment practices agency, the charges initially get referred to the state agency, and the state agency has the first chance, if it so chooses, to remedy that discrimination before it goes back to the EEOC. Second, there is this right of judicial review before this court. There is a court of appeals review. So, though it does go before the administrative agency, here the administrative agency does not have the last word if the complainant prevails before the EEOC. So, here they do have the full right to come before an Article III court. And as... Just on the proceeding, one little minor administrative matter, about the remedies. You said that the EEOC could award compensatory damages. Did you mean like back pay and future pay, if they don't get reinstated? Well, there is the discretion to award front pay instead of reinstatement. And in Title VII cases, reinstatement is a favored remedy, but the courts have recognized that it's just not appropriate in some cases. And in that case, you can award front pay. But punitive damages are not available against states under the statute. So, it's compensatory only. And I did want to just break in, because I know I have gone into Ms. Holen's time. And I did want to make sure to save some time for her. Oh, and thank you, and we will rest on our briefs on the other jurisdictional issues on the interlocutory appeal. Thank you. I'm Lee Holen, and I represent Margaret Ward, who is the intervener in this petition for review and the complainant below. I just had two points to make about the issue of latches that's raised by the state in their briefing. First, neither the administrative law judge nor the EEOC held that the state's defense of latches was abrogated or somehow lost to the state. They still have that defense. They simply lost its summary judgment because there are questions of fact. Second, latches is not an inextricable condition to Congress's abrogation of sovereign immunity for these GARA proceedings, as the state claims. With regard to the first point, both the administrative law judge and the EEOC simply found that there were questions of fact. The administrative law judge said that there were questions that precluded finding the complainant failed to act diligently, and also that the state failed to present any evidence that it was prejudiced. So there simply wasn't evidence in the record to determine this latches defense. The EEOC decided that nothing about the latches issue warranted them to deviate from their policy to limit appellate review. And that's the same policy of this Court. The second issue I'd like to discuss is that latches is not a condition to abrogation of sovereign immunity. I hate to interrupt you, but I'm not sure we get to this issue. This is an interim appeal, interlocutory appeal, and the burden's going to be on Alaska to prove that somehow we even decide this issue. And that's fine, it came up to the Court certified by, or it came to the EEOC certified by the administrative law judge, and the state argued it in its briefing, but if that's the Court's position, I don't have a problem with stopping right here. I'm not saying that's the Court's position. We're not announcing anything. Well, let me just say that this idea of latches being a condition to be decided before the sovereign immunity issue, there's absolutely no support in the case law for it. None of the cases cited by the state require that. Just an example is the Irwin case, and in page 33 of their reply, that case involves statutory time limits, not an equitable defense like latches. And so I think if the Court does get to this issue, the case law cited by the state simply doesn't hold for the proposition that the latches issue would have to be decided first. And with regard to Ms. Ward herself, her contention is that she really belongs under Title VII, and she's proclaimed that all along. She contends that she did not have the policymaking power and the type of job that would fit her. So part of the excerpts of record at 317, 329, and 370 show that her job was not of the type of job that should come under GARA in the first place. And the administrative law judge decided that was a matter that would require a hearing as well. Thank you. Counsel, I believe you had about three minutes left. Thank you, Your Honor. I'd like to focus in on counsel's statement that this Court would somehow have to overrule Hibbs. State of Alaska disagrees. Hibbs controls the outcome of this case. If you recall, Hibbs involved FMLA. The Supreme Court found that FMLA was designed to fill a gap in Title VII. And in the congruence of proportionality analysis, they found that the FMLA's exemption for elected state officials and their staffers was an appropriate exemption. And we got Hibbs bookending one end of the 91, GARA enacting 91, and we got the Congress's legislative history in 72 for Title VII. On both ends, Congress is finding that it's appropriate to exempt elected state officials in order to be congruent with the legislative history of Title VII. What we have here is we have the Government Employees' Rights Act with no statement of, or no finding of legislative history. I'd like to point out that Fremont County, if this Court makes the same findings about clear statement that the Fremont County Court held under the 11th Amendment, this case should be dismissed. For example, in Fremont County, they determined that there was no clear statement, but that a clear statement wasn't required under the 10th Amendment. But this is an 11th Amendment case, and Fremont County couldn't claim 11th Amendment immunity. And the findings there were, the quote is, let me get it real quick. The quote from the 10th Circuit, Congress did not recite its purposes in legislating the specific provisions of GARA concerning state employees. It found that there was no reference to the 14th Amendment, and it referred to the legislative history relating to state employees as scant. Now those same findings by this Court under the 11th Amendment congruence and proportionality requires that this Court find that the state of Alaska is immune from this sort of administrative claim. I see I'm out of time, and I rest on the argument and the briefs, unless there's any more questions. No, I don't believe so.
judges: Wallace, Noonan, Paez